THE PEOPLE, *on the relation of* Charles B. Coventry, *vs.* THE MEDICAL SOCIETY OF THE STATE OF NEW-YORK.

*Geneva College* is not entitled to send a delegate to the meetings of the *State Medical Society.*

MOTION for an alternative *mandamus* to the defendants, requiring them to admit the relator to a seat in the State Medical Society, as a delegate from Geneva College.

The relator states in his affidavit that he is one of the professors of the medical faculty of Geneva College; that he was duly elected a delegate to represent the college in the State Medical Society; that he attended the annual meeting of the society on the first Wednesday of February last, and presented his credentials, but was refused a seat in the society, " on the ground that the medical faculty of Geneva College is not a ' college of medicine' within the meaning of the statute of this state."

*By the Court,* BRONSON, J. The third section of the act of April 10, 1813, (3 *R. S.* 305,) declares that the State Medical Society " shall be composed of one member from each of the county societies in the state, elected by ballot at their annual meeting." The members are divided into classes, so that one fourth part go out of office annually. (§ 5-7.) The sixth section of the act of April 20, 1818, (3 *R. S.* 308,) declares, " that each of *the colleges of medicine* in this state may elect a delegate to represent their colleges respectively in the [540] Medical Society of the state, who shall be entitled to all the privileges, and subject to the same regulations, as the delegates from the county medical societies."

At the time the act of 1818 was passed, there were two medical colleges in this state, to wit, " The College of Physicians and Surgeons in the city of New-York," incorporated, in its present form, by the regents of the university, on the 4th of June, 1812, and " The College of Physicians and Surgeons of the Western District," incorporated by the regents on the 12th of June, 1812. There were also, at that time, three literary colleges in this state, to wit, Columbia, Union, and Hamilton; to which Geneva College was added by a charter from the regents of the university, on the 8th of February, 1825.

Geneva College, as the charter expresses it, was established " for the instruction and education of youth in the learned languages and liberal arts and sciences;" and the trustees have power to " give and grant any such degree and degrees, to all such persons thought by them worthy thereof, as are known to and usually granted by any university or college in Europe." Columbia, Union,

and Hamilton Colleges have the like powers. (3 *R. S.* 238, § 7, and *p.* 235, § 6. 1 *R. S.* 460, § 36.)

Each of the literary institutions has an undoubted right to appoint professors to give instruction in the healing art, or, as the relator expresses it, to institute a medical faculty, and may confer the degree of doctor of medicine. But it does not follow that they can send delegates to the State Medical Society. At the time the act of 1818 was passed, we had two classes or descriptions of colleges—literary and medical; and the act provides for one class by its appropriate name, and says nothing about the other. It is difficult to conceive why the legislature should use the appellation " colleges of medicine," if it was intended to include literary as well as medical institutions.

It may be proper that Geneva, and every other college having a medical faculty, should be represented in the State Medical Society; but that is a consideration which addresses itself to the legislature, and not to the judicial department of the government. The question before the court is, what provision on this subject has been made by law; and I cannot entertain a [541] doubt that the act of 1818 only extends to those institutions which have been established for the special purpose of advancing the science of medicine.

The argument on which the relator seems principally to rely, is, that the act of the last session (*Laws of* 1835, *p.* 36) recognizes Geneva College, with its medical faculty, as an incorporated medical college, and that it is consequently entitled to send a delegate to the State Medical Society. But it will be found on examination, that this act neither increases the powers, nor imparts any new character to Geneva College. It merely gives a new force or effect to the diplomas which, under certain regulations, may be granted by the trustees of that institution, and to the lectures which may be delivered by its medical faculty.

We have already seen that all the literary colleges have, by their charters, power to appoint a medical faculty, and to grant diplomas conferring the degree of doctor of medicine. But the diploma did not give the right to practise physic or surgery. It is expressly declared, (1 *R. S.* 455, § 21,) that " the degree of doctor of medicine conferred by any college in this state, shall not be a license to practise physic or surgery." The right to practise was only conferred by a diploma from " one of the incorporated medical societies," or " the regents of the university." (*P.* 454, § 16.) The twelfth section of the same title declares, among other things, that no person shall receive from the regents of the university a diploma conferring the degree of doctor of medicine, unless he shall have attended " two complete courses of all the lectures delivered in an *incorporated medical college*, and have attended the last of such courses in the college by which he shall be recommended for the degree."

When Geneva College instituted its medical faculty, two difficulties in the way of the success of the enterprise were presented—*first*, the diplomas which it had authority to grant would not confer the right to practise; and *second*, a degree which should confer the right could not be obtained from the regents of the university, because this was not an "incorporated medical college." That language was supposed to apply exclusively to the College of Physicians [542] and Surgeons in the city of New-York, and the College of Physicians and Surgeons of the Western District. These institutions had by their charters no power to grant diplomas, but might recommend students for the degree of doctor of medicine to the regents of the university. To provide for these two difficulties the act of 1835 was passed; and to them it is strictly confined. It provides that the 21st section (already cited) " shall not be deemed to apply to the diplomas conferring the degree of doctor of medicine granted by the trustees of Geneva College," under certain specified circumstances; and that "all the provisions of said title seven, which require an attendance upon the lectures delivered at *an incorporated medical college*, shall be deemed to apply to and include the lectures delivered by the medical faculty of Geneva College: and the diplomas

granted pursuant to this act shall have the same force and effect as licenses to practise physic and surgery, as are given by law to the licenses granted by any incorporated medical society in this state." This act has attained the precise objects for which it was evidently designed, and beyond those I do not perceive that any consequences can flow from it. It does not declare what the law was before, but on the contrary, professes " to amend" that law: it confers no new powers on the college, but amends certain portions of the Revised Statutes, so as to give the same legal effect to the lectures delivered by the medical faculty of this institution, as though they had been delivered by " an incorporated medical college." The legislature certainly did not understand that they were amending the charter, or granting any new powers or privileges to the college, for the act passed both houses as a majority bill, and in the senate, where the question was made, it was expressly decided that this was not a two-third bill. (*Assembly Journal,* 1835, *p.* 272; *Senate Journal, p.* 172, *3.*)

Since the passing of the act of 1835, an attendance upon the lectures delivered by the medical faculty of this institution, is, in its legal consequences, as beneficial to the student as a like attendance upon the lectures delivered in a [543] medical college; but all the powers and privileges of Geneva College remain as they were before. If it had no right to send a delegate to the State Medical Society previous to 1835, it has none now. Entertaining no doubt upon this question, the motion for a mandamus must be denied.